## Case No. 14,289.

### The TWO FRIENDS.

[1 Gall. 118.] [1]

Circuit Court, D. Massachusetts.   May Term, 1812.

FORFEITURE—COASTING VESSEL.—ILLEGAL TRADE—LICENSE—SALE TO FOREIGNER.

If a coasting vessel be engaged in an illegal traffic, it is a good cause of forfeiture, within the 32d section of the coasting act, Feb. 18, 1793, c. 8 [1 Stat. 316]. If a vessel licensed for the fisheries take on board goods with intent to transport them on an illicit voyage, it is a sufficient "trade other than that for which she is licensed" within the same section. A licensed vessel, transferred in whole or in part to a foreigner, is forfeited under the thirty-second section of the same act, notwithstanding upon such transfer, by the fifth section of the same act, the license is no longer in force. Under the thirty-second section, the cargo found on board at the time of seizure is forfeited, and not merely the cargo on board at the time of committing the offence.

[Cited, but not followed, in U. S. v. Open Boat, Case No. 15,968. Cited in The Nymph, Id. 10,388; The Henry, Id. 6,373; The Willie G., Id. 17,762.]

[Appeal from the district court of the United States for the district of Massachusetts.]

G. Blake, for the United States.

R. G. Amory, for claimant.

STORY, Circuit Justice. The libel in this case contains a number of counts; but three only were relied on at the trial. The first alleges, that the schooner Two Friends was a vessel of the United States, duly enrolled and licensed for the fisheries, and was, during the continuance of such license, transferred to the claimant [Thomas Young], who at the time of the transfer was an alien and subject of Great Britain, and that, at the time of the seizure, she had the cargo on board, which is now before the court. The second count alleges, that the said schooner, being so licensed, was employed in a trade other than that for which she was licensed. The third count alleges, that the claimant, being owner and master of the schooner, for the purpose of procuring a new license and enrolment of said schooner for the fisheries, took and subscribed the oath in that case prescribed by law, whereas, in truth and in fact, at the time of taking and subscribing such oath, he was not and never hath been a citizen of the United States; for all which reasons the schooner and cargo are now claimed as forfeited. The facts appear to be, that previous to the 2d of April, 1807, the schooner was owned by one David Stanwood, and stood enrolled and licensed for the fisheries in his name. On that day he conveyed the one moiety of said schooner to the claimant, upon which the schooner was enrolled and licensed anew for the fisheries, and continued thus employed, under a licence, until the 25th of March, 1808. On

this day Stanwood sold his one half of the schooner to the claimant, who thereupon became sole owner. The bill of sale was drawn and executed in the custom house at Boston, and immediately thereupon the old enrolment and license were cancelled, and a new enrolment and license for the fisheries, for one year, were taken out by the claimant in his own name. In order to obtain such new enrolment, the claimant, as owner and master, took the oath prescribed by the act, in which among other things he swore, that he was a citizen of the United States. It abundantly appears from the declarations of the claimant, that he was a British subject, and never had become a citizen of the United States. On the 2d of November, 1809, late in the evening, the schooner was found laden with flour, then lying at Russel's wharf in Boston, the claimant was on board, and declared that the flour, amounting to 102 barrels, was intended to be transported to Point Shirley in Chelsea, but no doubt can remain, that they were really intended for a foreign voyage. At this time the papers of the vessel were in the custom house at Boston.

As to the last count, I doubt, if it alleges any matter, to which the law has attached any forfeiture. It is true that the act for registering vessels, in section 4 (Act Dec. 31, 1792, c. 1; 2 Laws [Folwell's Ed.] 135, § 4 [1 Stat. 289]), declares, that a false oath by the owner in any matter of fact, required to be sworn in that section previous to the grant of a registry, shall work a forfeiture of the vessel. And the act for enrolling and licensing vessels in the coasting trade and fisheries, in section 2 (Act Feb. 18, 1793, c. 8; 2 Laws [Folwell's Ed.] 168 [1 Stat. 316]), provides, that in order to obtain an enrolment, vessels shall possess the same qualifications, and the same requisites in all respects shall be complied with, as are made necessary to the registry of vessels, and the same duties and authorities are given and imposed on officers, and the same proceedings are to be had in similar cases touching such enrolment, and the ships and vessels so enrolled, with the masters and owners thereof, are to be subject to the same requisites, as are provided for the registry of vessels. But it is no where declared, that a violation of these provisions shall be followed with like penalties and forfeitures. On the contrary, the coasting act, in section 30, has substantively declared, that the false swearing in any oaths, required by that act, shall be punished as wilful perjury. Now it is certainly, not the duty of the court to seek out new modes of punishment, when the legislature has prescribed a specific punishment in its own direct terms. Nor can it be proper to pronounce that to be a qualification, requisite, duty or proceeding within the act, which is a forfeiture for a wilful violation of the same act. However, I give no absolute opinion on this point.

[1] [Reported by John Gallison, Esq.]

24 FED. CAS.—28

As to the second count; it seems to me, that the decision of the supreme court of the United States in The Active v. U. S., 7 Cranch [11 U. S.] 100, fully applies to the present transactions. In that case the vessel was licensed for the fisheries, and in the night time took on board a cargo of goods of domestic growth and manufacture, and departed from a wharf, but had not left the port at the time of seizure; yet the court held it clear, that the vessel "was employed in a trade, other than that for which she was licensed," contrary to the thirty-second section of the coasting act. Now, there is no other difference between that case and the present, except the departure from the wharf; but that circumstance was not relied on. The act of taking on board the goods, with intent to transport them, seems to have been held a trading within the act.

As to the third count; it appears from the facts, that at the time of both of the transfers to the claimant (and either was sufficient to constitute a forfeiture, the vessel was a licensed vessel; and that immediately afterwards new licenses were taken out, and the vessel was employed under them in the fisheries of the United States. The case, therefore, falls directly within the prohibitions of the thirty-second section of the coasting act, which declares, that a licensed vessel, transferred in whole or in part to any person, not a citizen of the United States and resident therein, shall work a forfeiture of the vessel and the cargo found on board of her. But to rebut this conclusion, the counsel for the claimant has contended that the fifth section of the same act has declared, that no license granted to any ship or vessel shall be considered in force, any longer than such ship or vessel is owned as set forth in the license; and that, by the transfer to the claimant, the license became ipso facto void, and, therefore, the vessel could no longer be considered as a licensed vessel. If this argument be just, it completely defeats the whole operation of this part of the thirty-second section, and avoids the forfeiture in the only case, in which it ought to attach. Such a construction is, therefore, utterly inadmissible. Besides, the license even in this view would not cease, until after the transfer was complete, and the forfeiture would attach at the same instant, and by operation of law would acquire a priority. Plowd. 253, 264. For even an instant may, we learn, be divided for this purpose. See Plowd. 253, etc.; Co. Litt. 185; 14 Vin. Instants. But I do not rely on such niceties. The manifest intent of the fifth section was, that the license should be considered in force no longer than while the ship was held by the same owners; and that a subsequent transfer, even to a citizen of the United States, should not entitle the vessel to the further benefit of it, although such transfer would not work any forfeiture whatsoever. In this view it seems directory to the officers of the United States, as to the allowance of the privileges granted to such vessels. And, indeed, from the peculiar penning of the eighth section of the same act, it seems to result, that the legislature not only intended, that vessels employed in the coasting trade and fisheries should not be owned by foreigners; but also that, even after yielding up that employment, such vessels should not be entitled to carry on a foreign trade, unless registered as ships of the United States, and of course owned exclusively by citizens of the United States.

It is further argued, that supposing the vessel forfeited, yet the cargo is not; (1) because no cargo is forfeited, except what is found on board at the time of the transfer; (2) because the cargo was owned by a bona fide shipper, not being an owner or master or mariner of said ship, and so protected by the thirty-third section of the act.

As to the first point, I am satisfied, that the true construction is, that the cargo found on board at the time of the seizure is forfeited. The object of the legislature was, to punish any illegal trade carried on by persons who either knew, or ought to know, that the vessel is not entitled to such a privilege, but is sailing with false colors.

As to the second point, I answer, that no person appears as claimant but the owner of the schooner, no other person is named in the proceedings as owner; and I cannot decide upon the interests of persons, who do not choose to interpose their claims. I must doubt the real nature of that property, which is defended under cover, and is obtruded so indistinctly on the court, that it has never yet assumed a definite shape, and remains without a local habitation or a name in the cause.

On the whole, I affirm the decree of the court below, with costs.