## Case No. 16,003.

### UNITED STATES v. The PARYNTHA DAVIS.

[1 Cliff. 532.] [1]

Circuit Court, D. Maine. Oct. Term, 1860. [2]

SHIPPING—FISHING VESSELS—BREACH OF LICENSE—ADMISSIBILITY OF EVIDENCE—PAROL EVIDENCE.

1. A libel under the thirty-second section of the act of February 28, 1793 (1 Stat. 316), need not specify the particular trade in which the vessel was engaged at the time of the seizure; it is sufficient, as a general rule, to bring the case within the words of the act of congress.

2. Where a vessel was libelled for forfeiture for breach of a license to catch codfish, by catching mackerel at a certain time and place, *held*, that parol evidence might be given of her

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

2 [Affirming Case No. 16,004.]

catching mackerel at other times and places during the trip, as showing the real business of the voyage.

3. A fishing-vessel licensed to catch codfish cannot catch mackerel, except as bait or provision for the crew; and this incidental privilege ought to be exercised fairly and in good faith.

[Cited in The Grace Darling, Case No. 5,-651.]

[Appeal from the district court of the United States for the district of Maine.]

This was a libel of seizure against the schooner Paryntha Davis for a forfeiture, resulting from an alleged illegal employment of the vessel. The libel set forth that the schooner was regularly seized at Portland on the 12th of October, 1857, and that prior to the seizure she was a vessel of the United States, duly enrolled and licensed to carry on the cod-fishery, and that, being so licensed, was then and there employed in a trade other than that for which she was licensed. At the hearing it appeared that the schooner, on March 27, 1857, took out a license in the collection district of Barnestable, in the state of Massachusetts, for carrying on the cod-fishery, and was employed under that license until July 23d, when the license was surrendered and one taken out for the mackerel-fishery. The schooner held her mackerel license until September 22d, when she again surrendered it and took out a cod-fishing license. The schooner sailed from Wellfleet, September 24, 1857, and was seized October 11th at Hogg Island Roads, in Portland Harbor. When seized, she was at anchor by the side of another fishing-schooner, and had mackerel-lines all around the waist. Some fifteen or twenty barrels of mackerel were found on board, and also twenty empty mackerel-barrels. Mackerel recently caught were found in wash-barrels on the deck, and there were about fifteen barrels of salt on board. The hawser and chain cable of the vessel were not such as are suitable for deep-sea fishing. No codfish were seen on board, except a few dried or pickled, apparently having been caught more than a month. The first day the boarding officers went on board no cod-lines were discovered, but on a second visit they were shown some which were brought on deck by the crew, but the lines were without sinkers. The barrels containing the mackerel were stowed away on the bilge. There were porgies for floating bait, and a mill for preparing them. Inquiry from the master and others on board the schooner elicited that they were "catching anything that came along." It was in testimony that there was a complement of cod-lines on the vessel, and everything necessary for preserving the fish when caught. The testimony showed that during a course of several days more mackerel than codfish had been caught, although several attempts had been made at various places. It was set up that the mackerel were caught to be used for bait, although it did not appear that they

were used for such purpose. Several barrels of mackerel were caught at different times, but no codfish of any amount. It was shown in evidence that a portion, at least, of the mackerel were split and corned. The vessel was on her trip some sixteen or seventeen days, at the end of which, returning to Portland for water, she was seized. Nine days afterwards she was delivered to the claimants, upon giving a bond in the usual form, shortly after which she took a license for the mackerel-fishery. The district judge was of opinion that the vessel was employed, if not exclusively, at least in part, in taking mackerel, not for bait or consumption by the crew, but as the proper business of the voyage. [Case No. 16,004.]

B. F. Hallett, for claimants.

The information is insufficient, because it does not set out what other trade, and, though in the words of the statute, is uncertain where it should be specific. Dunl. Adm. Prac. 431; The Merino, 9 Wheat. [22 U. S.] 391. The libel having alleged a specific time and place, "then and there" when the vessel was so employed, the libellants can give no evidence except of employment at that time and place. Macomber v. Thompson [Case No. 8,919]. To work a forfeiture under the thirty-second section of the act of 1793, the vessel must have abandoned her employment in the cod-fishery and engaged in some other. The catching of mackerel is not a trade separate from fisheries, because the act of 1793 (section 4) speaks of licensing vessels for the coasting trade and other fisheries. U. S. v. The Reindeer [Case No. 16,-145]. The court will require the most determinate evidence that the mackerel-fishery was intentionally and exclusively carried on. The Harriet [Id. 6,099]. The decisions bearing on this case are The Active, 7 Cranch [11 U. S.] 100; The Two Friends [Case No. 14,289]; The Eliza [Id. 4,346]; The Swallow [Id. 13,666]. The intent is no part of the evidence for or against condemnation. The law does not punish the intention to defraud the revenue; there must be an unlawful act. U. S. v. Riddle, 5 Cranch [9 U. S.] 311.

G. F. Shepley, U. S. Dist. Atty., for the United States.

The cod-fishery and the mackerel-fishery are severally "trades" within the legal meaning of the act of 1793, and each is a distinct trade from the other. The Harriet [Case No. 6,099]; The Nymph [Id. 10,389]; The Active, 7 Cranch [11 U. S.] 100; The Eliza [Case No. 4,346]; 4 Stat. 312; 5 Stat. 16.

CLIFFORD, Circuit Justice. Forfeiture of the vessel is claimed under the thirty-second section of the act of the 18th of February, 1793. Omitting all such parts of the section as are inapplicable to this case, it provides, in effect, that if any licensed ship or vessel shall be employed in any other trade than that for which she is licensed, every such ship or vessel, with her tackle, apparel, and furniture, and the cargo found on board her, shall be forfeited. 1 Stat. 316. As shown by the proofs, she was engaged in the mackerel-fishery, and it is insisted, on behalf of the United States, that the mackerel-fishery is an employment other than that for which she is licensed, within the meaning of the act of congress upon which the proceeding is founded. But it is objected by the appellants that the allegations of the libel are insufficient to support a decree of forfeiture, because it does not specify the particular trade in which the schooner was engaged at the time of the seizure. But it is quite obvious that the objection cannot be sustained. Technical rules of pleading are not so much regarded in libels of this description as in indictments and informations at common law. Where there are no technical words or phrases employed in the prohibition of the statute, it is sufficient, as a general rule, to bring the case within the words of the act of congress on which the information is founded. Repeated decisions have established that rule of pleading in cases of this description, and it is undoubtedly correct. The Samuel, 1 Wheat. [14 U. S.] 9; The Hoppet, 7 Cranch [11 U. S.] 389; The Merino, 9 Wheat. [22 U. S.] 401. No such objection was taken in the district court, and I am of the opinion it cannot prevail, especially after appearance and answer to the merits.

Looking at the testimony of the claimants alone, it would not be possible to hold that the crew were in good faith pursuing the business for which the schooner was licensed, and, when taken in connection with the testimony of the boarding officers, it clearly shows that the conclusion reached by the district court was correct. But it is insisted by the claimants that none of the parol evidence was admissible, except that offered to prove what the employment of the vessel was at the time and place as alleged in the libel. Two answers may be given to that objection, either of which is sufficient to show that it cannot be sustained: 1. All the evidence in the case as to what was done during the trip was introduced by the claimants, and clearly they cannot now object to testimony introduced in their own behalf. 2. Another answer, however, may be given to the objection, which perhaps will be more satisfactory; and that is, that the testimony would have been admissible if it had been offered by the government and seasonably objected to by the claimants.

As alleged in the libel, the charge is, that, prior to the seizure, to wit, at Portland on the 10th of October, 1857, the schooner was a vessel of the United States, duly enrolled and licensed to be employed in carrying on the cod-fishery, and that she was then and there employed in a trade other than that for which she was licensed. Whether that charge is true or not depends upon what had been done

during the trip, and obviously evidence to show what had been done was admissible to make out the charge or to establish the defence. Unless the rule was so, it might be impossible to administer justice, as any evidence that could be offered as to what had been done on a given day might, and in all probability would, be unsatisfactory. Correct pleading requires that time and place should be specifically alleged, and if prior acts during the same trip should be held to be inadmissible, great injustice might be done. Without stopping to cite authorities to this point, suffice it to say that I am clearly of the opinion that on principle the objection is without merit. Lastly, it is insisted by the claimants that the catching of mackerel is not a trade other than that for which the schooner was licensed. It is a sufficient answer to this objection, to say that the rule of law as understood in this court is settled otherwise. Judge Ware held, in the case of The Nymph [Case No. 10,389], that since the act of the 24th of May, 1828, a vessel licensed for the cod-fishery is not authorized by her license to engage in the mackerel-fishery, because that act requires a distinct license for that business. 4 Stat. 312. That case was appealed to the circuit court, and after a very deliberate consideration, the decree of the district court was affirmed. Until the mackerel-fishery was, by the act of congress, separated into a distinct employment, says Judge Story in a later case, it was frequently carried on in common with, and as an incident to, the cod-fisheries; and he adds, somewhat unguardedly, that no one can now doubt that mackerel may still be caught in the cod-fisheries, if it be not so pursued as to supersede the principal employment. but is a mere accessory or incidental business. While it must be admitted that the closing paragraph of the sentence is rather broader than the rule laid down in the previous case, still it must be weighed in connection with the residue of the opinion. and, when so read and understood, the two opinions are entirely consistent. The Harriet [Case No. 6,099].

Undoubtedly a vessel licensed for the cod-fishery may take mackerel for bait and for consumption by the crew, as provisions during the trip; and as fresh mackerel make the best bait, the crew may take them as frequently and in such quantities as it may be reasonably necessary for them to do for those purposes; and where it appears that they pursued the proper business for which the vessel was licensed, in good faith, and on the return of the vessel, or at the time of her seizure, have only such quantity of mackerel on hand as may reasonably be inferred from the circumstances to have been taken in the fair exercise of that legitimate right, the law does not authorize the forfeiture of the vessel because there happens to be some excess. They must pursue the proper business for which the vessel is licensed, and in exercising the incidental right of taking mackerel for bait and for consumption by the crew, they must act reasonably and in good faith. Such in effect is the rule laid down by the two learned judges in the cases already cited, and I am of the opinion that it is correct. Reference is made by the counsel of the claimants to the case of The Reindeer [Id. 16,145], as asserting a more liberal doctrine, and it cannot be denied that there are some expressions to be found in that opinion which afford some countenance to the argument. But it does not purport to overrule the prior decisions upon the subject, and until the question is revised by the supreme court, I consider myself at liberty to adopt the earlier and, as I think, the better construction of the act of congress. The decree of the district court is therefore affirmed with costs.