## Case No. 5,935.

### HALL v. HUDSON.

[2 Spr. 65.] [1]

District Court, D. Massachusetts. Feb., 1863.

ADMIRALTY—LIBEL FOR SUPPLIES BY PART-OWNERS—JURISDICTION—STATUTE OF LIMITATIONS.

1. Equitable ownership in a vessel, or ownership pro hac vice, need not be shown by a bill of sale or registry.

[Cited in U. S. v. The Fideliter, Case No. 15-088.]

2. Equitable co-owners of a vessel who are also material men, cannot maintain a libel in admiralty against the other co-owners to recover their bill for supplies, if their claim constitutes a portion of the accounts of the part-owners. In such case admiralty has no jurisdiction.

[Cited in The H. E. Willard, 52 Fed. 388; Id., 53 Fed. 601.]

3. Proof of a custom to pay the mechanic part-owner his bill without awaiting the general settlement of accounts, will not avail, if it also appear that such bills do await the settlement of what is known as the outward account of the voyage.

4. This court is not bound by the Massachusetts statute of limitations, but is inclined to follow its analogies.

5. Where more than six years have elapsed since a cause of action has accrued, the commencement within that time of a suit in equity, which was subsequently discontinued, in the state court, will not excuse the delay, especially where the other owners may have been prejudiced by the delay.

This was a libel against the owners of the bark Clara Bell, for the blacksmith bill of her second voyage, in 1856. It was resisted by the respondents on various grounds; viz. that they had severally paid their shares of the outfit to R. L. Barstow, the agent, in 1856; that the libellants were in fact co-owners in the voyage; that the court had no jurisdiction; and that the claim was stale.

R. C. Pitman and C. T. Bonney, for libellants.

T. M. Stetson, for respondents.

SPRAGUE, District Judge. The libellants claim that they were not co-owners, and that only one of them, Martin Hall, owned in the bark. This is confirmed by the bill of sale, so far as the strictly legal title is concerned; but the evidence shows that the firm were charged with expenses and credited with profits of the one sixty-fourth part of the vessel at the request of both of them, and it appears that the senior libellant, Larnet Hall, once expressed considerable feeling at finding that his name was left out of the registry and bill of sale. There is other evidence as to the way this ownership was re-

---

[1] [Reported by John Lathrop, Esq., and here reprinted by permission.]

garded, and, upon the whole, I am satisfied that the one sixty-fourth in question belonged to both the libellants, that they both were its equitable owners; owners so far as this enterprise is concerned, although possibly not so in respect to third parties. The registry acts and the act of 1850 for recording conveyances of vessels (9 Stat. 440) have no applicability to the issue on trial. This is a question of equitable ownership, of ownership pro hac vice, and need not be specified by the agent even in his registry oath, unless aliens are interested.

I therefore hold that the libellants are to be deemed co-owners for this voyage, and if their claim constitutes a portion of the accounts of the part-owners and enters into the same, then this court has no jurisdiction concerning it. The libellants try to avoid this result by claiming that this contract was an independent one, and was to be paid without reference to their account as owners. Much evidence has been offered on this point. They do not thus claim under any express contract, but by an alleged custom in Mattapoisett and New Bedford to pay the mechanic part-owner his bill without waiting the general settlement of accounts. Perhaps their witnesses do prove this, but they also prove that such bills of part-owners do await the settlement of the outward account, there being in a whaling voyage two accountings. Such bills are credited in such outward account, and balances are sometimes paid, but not the specific bills. It appears, then, that such bills are settled in an accounting of part-owners, with which admiralty has nothing to do. It does not aid the libellants to show that the agent had retained their share of the former voyage. This merely adds, if any thing, another item to the account, and makes it none the less an accounting.

2. I think the libellants' claim must be deemed stale. This court is not bound by the Massachusetts law of limitations, though it inclines to follow the analogies of that statute. So much time has elapsed that the libellants ought to plead and prove some excuse for their delay. They show that in 1861 they notified Abner H. Davis, the agent of the ship, that they should sue, and soon after, in 1861, did commence a suit in equity in the supreme court of Massachusetts, which suit they subsequently discontinued. These acts do not excuse the delay. Besides, the libellants' witnesses prove a custom for owners to pay their share of the outward account in a few months after sailing. The libellants must therefore be taken to have known that the respondents so paid early in 1856 to R. L. Barstow. They often in his life, after that, claimed of him, and often told him that they did not release the other owners. But they never told the other owners so, till after his death and the insolvency of his estate. Is it right for them now to pursue the other owners? Certainly not. Why did they not make Barstow pay when they knew he had the owners' money? I think they wished to stand well with him for their own benefit, in getting his business, &c., and they must bear the consequences. Decree for respondents.