## Case No. 9,202.

### The MARY CELESTE.

[2 Lowell, 354.] [1]

District Court, D. Massachusetts. Dec., 1874.

SHIPPING—FORFEITURE — TITLE — INNOCENT PURCHASER—FRAUDULENT CERTIFICATE OF REGISTRY—SIGNATURE.

1. Where absolute forfeiture to the United States is the statute penalty for an act, the title accrues when the penal act is committed.

2. If the forfeiture is alternative, property or its value, the title does not vest until the election is made. Meanwhile, an innocent purchaser may acquire a title not subject to forfeiture by subsequent seizure.

3. Under St. 18 July, 1866, § 24 (14 Stat. 184), "If any certificate of registry . . . to any vessel shall be knowingly and fraudulently obtained or used for any vessel not entitled to the benefit thereof, such vessel, with her tackle, apparel, and furniture, shall be liable to forfeiture," the forfeiture is an absolute one, and vests the property in the United States when the fraud is committed. "Liable" only implies that the United States may not discover or may not enforce the forfeiture.

4. If the papers, by means of which such registry is obtained, are identified, and come from the possession of government, it is not necessary to prove the signature to each paper.

The United States seized the brig Mary Celeste. July 9, 1872, and at once filed a libel against her as forfeited; alleging that in December, 1868, Richard W. Haines, the then owner of said brig, knowingly and fraudulently obtained a certificate of registry for said brig, to the benefit of which she was not entitled.

The answer denied the allegations of the libel; and further averred that the claimants were bona fide purchasers of the brig since the certificate was obtained, and without notice of any fraud. No objection was taken to the very general form in which the charge was made in the libel. There was evidence tending to show that the brig came into the port of New York in November, 1868, from Matanzas; that she was then the British brig Amazon; that she was sold at auction on or about Nov. 28, and bought by R. W. Haines, an American citizen and shipmaster, for $2,800; that she was repaired by him. at a cost of about $10,000, and was not worth much more than the cost of the repairs; that Haines applied to the secretary of the treasury to issue a register to the brig, under the statute of Dec. 23, 1852, 10 Stat. 149, which authorizes such action when a foreign-built vessel is wrecked in the United States, and bought and repaired by a citizen thereof; provided it shall be proved to the satisfaction of the secretary that the repairs amount to three-fourths of the value of the vessel when repaired. The application was granted, and a register was issued to the brig, under the name of the Mary Celeste. The government maintained that the brig never was wrecked

in the United States; and introduced evidence that she arrived in New York from Matanzas without any appearance of having been wrecked, and that the protest and portwarden's certificate forwarded to the secretary of the treasury were false and fraudulent. There was evidence that the present owners of the brig bought their respective shares innocently.

The forfeiture was said to have accrued under section 24 of the act of 18th of July, 1866 (14 Stat. 184): "that, if any certificate of registry . . . to any vessel shall be knowingly and fraudulently obtained or used for any vessel not entitled to the benefit thereof, such vessel, with her tackle, apparel, and furniture, shall be liable to forfeiture."

G. P. Sanger and P. Cummings, for the United States.

M. F. Dickinson, Jr., for claimants.

LOWELL, District Judge. The first question is, whether the papers said to have been forwarded to Mr. McCulloch, secretary of the treasury, are duly proved. A package of papers fastened together, of which the first and one other are positively sworn to, is produced from the custody of the government. Three witnesses, through whose hands they passed, recognize the package generally, though two of them can positively identify only the wrapper. The broker who got up the case, and gave the papers to the proper officer of the custom-house in New-York, swears to his letter, which contains a list of the papers, and the papers correspond to the list. He swears to the protest which was taken before him as a notary. The papers were put in evidence at the first hearing, which was some weeks before the close of the case; and it would have been easy to prove fraud or forgery in the documentary evidence, if any such existed. The papers are sufficiently identified.

The principal question of fact is, whether Haines knowingly and fraudulently obtained a register for the brig to which she was not entitled. In construing such a statute, it is right to give the citizen the benefit of any doubtful phrases, and that the offence is not committed unless the vessel is not entitled to the register which she obtained; that is to say, misstatements, though false and wilful, will not forfeit the vessel, if it can be proved as a matter of fact that the vessel, after all, was fully entitled to the benefits which she received. But I agree with the district attorney, that, if fraud and falsehood are proved, it cannot but be very strongly inferred that the truth would not have served the purpose. It is entirely clear that the protest was a tissue of gross fabrications from beginning to end. The man who swore to it as master was not master; the voyage he testified to was antedated about a month, to give time for an imaginary wreck on the shores of the United States; the cargo was not taken out of the brig, as he swears it was; nor was she

1 [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

towed to New York: from all which, it is safe to conclude that she never was wrecked at all. It is further proved that the port-warden's certificate, which purports to describe a wreck and uses that word, is spurious. As the protest is the only evidence which was before the secretary, or has been put into the case, that the vessel was wrecked in the United States, it is hardly necessary to examine the other and less startling falsehoods which are said to be found in the papers.

The question of law is, whether the brig can be forfeited in the hands of innocent purchasers; it being admitted that one-quarter part of the vessel is held by such persons, and argued that the whole is so held. When an act of congress denounces an absolute forfeiture as the consequence of an act, the title of the United States accrues when the prohibited act is done (U. S. v. 1960 Bags of Coffee, 8 Cranch [12 U. S.] 398; Henderson's Distilled Spirits, 14 Wall. [81 U. S.] 44); and it is equally well-settled, that. when the forfeiture is in the alternative, the property or the value, then the title does not vest in the government until they have elected which they will take; and, in the mean time, an innocent purchaser may acquire a title which cannot be forfeited by a subsequent seizure (U. S. v. Grundy, 3 Cranch [7 U. S.] 338; Caldwell v. U. S., 8 How. [49 U. S.] 366).

The claimants insist that the statute governing this case is within the reason of the second class of decisions rather than the first. The words are, "shall be liable to forfeiture;" which they interpret to mean, that the property does not vest until the seizure. It is true of all forfeitures that they must be completed by seizure and the other requisite proceedings, before the title will vest in possession; but, when the seizure is made, it relates back to the time of the forfeiture, excepting when the statute has expressed a different intent. Such a difference was found when the forfeiture was alternative; but there is no alternative in this statute. The vessel is forfeited, if any thing is; and I can see only the contingency that the government may not choose to prosecute, or may not discover the liability; and this is all, I think, which is meant by the phrase in question.

The learned counsel have collated, with much pains, the very numerous provisions of the internal revenue laws, by which penalties are affixed to acts and neglects; and I have examined many of them. The enactments are very various in form. There are many in which it is clear that only the title of the individual wrong-doer is to be taken; as where, upon conviction, certain instruments or articles of the defendant are forfeited, or where the collector may seize distilled spirits which have not been sold by the manufacturer who has broken the law, or which have not passed out of his possession, &c. A large number use words of present forfeiture; a few have the alternative of "the goods or their value;" and a few the expression, "liable to forfeiture." I cannot discover, by an inspection of these last-mentioned sections, that there is any thing in the character of the offence to lead us to expect a different sort of forfeiture from those which are plainly absolute. The reason given in 3 Cranch [supra], that you cannot tell which of the two things is the property of the United States until they have made their choice, fails to apply; and I am bound to say, that I cannot find any legal distinction between the various forms of expression by which a forfeiture without an alternative is expressed.

Decree for the United States.