MARY L. BRAGA *vs.* MELVIN E. BRAGA & another.

Essex.    October 7, 1943. — October 28, 1943.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Trust,* Resulting trust. *Ship. Jurisdiction,* Ship. *Conflict of Laws. Admiralty. Equity Jurisdiction,* Plaintiff's clean hands. *Public Policy.*

Where an alien woman, during construction of a fishing vessel and before enrollment thereof, purchased a share therein for a price partly paid by her at that time and partly paid subsequently out of the earnings of the share, and in good faith arranged to have the title to the share taken in the name of her native born son and so recorded upon enrollment of the vessel, intending no gift to him and to have the title transferred into her own name upon her becoming a citizen, a resulting trust of the share in her favor arose at the time when the son acquired the legal title, even assuming that ownership of such an equitable title by her as an alien offended the Federal enrollment statute; and upon her being naturalized as a citizen thereafter, she was entitled in equity to have the son ordered to transfer the legal title to her.

While a vessel is under construction in a shipyard and before Federal registry or enrollment, it is a chattel governed exclusively by State law and there is no legal impediment to its ownership by an alien.

Even if an alien having equitable title by resulting trust to a share in a vessel, by arranging in good faith to have the legal title to the share recorded in the name of a citizen upon enrollment of the vessel by the managing owner, was a personal wrongdoer under the Federal enrollment statute, and a portion of the price which the alien agreed to pay for such share was subsequently paid out of earnings of the share illegally made by the vessel, such equitable owner, upon becoming naturalized as a citizen, was not barred from maintaining a suit in equity against the holder of the legal title seeking a transfer thereof to the plaintiff; nor was the plaintiff precluded by such conduct or by public policy from recovering in such suit certain earnings of the share in the hands of the managing owner, who, also a defendant, made no defence to the plaintiff's claim therefor.

BILL IN EQUITY, filed in the Superior Court on January 12, 1942.

The suit was heard upon a master's report by *Donnelly,* J.

*J. R. Cahill, Jr.,* for the defendant Braga.

*G. L. McDonald,* for the plaintiff.

LUMMUS, J. The facts appear in a master's report which has been confirmed. In 1927, while the fishing schooner

Olivia Brown was being built in a shipyard at Essex in this Commonwealth, the plaintiff, then an alien, bought from the builder for $3,000 a one-sixteenth interest in the vessel. Her tonnage does not appear, but from the fact that she was subsequently enrolled we infer that it was twenty tons or upwards. U. S. C. Title 46, §§ 251, 273. The builder advised the plaintiff that as an alien she could not legally take title in her own name, but that it would be legal and proper for her to take title in the name of any child of hers born in the United States. She believed what the builder told her and acted upon it in good faith. She understood from the builder that the names of the owners must be recorded in the Custom House. She directed the builder to have the certificate of title to her interest stand in the name of her son, the defendant Melvin E. Braga, who was born in the United States and was thirteen years old. Title was taken accordingly. The plaintiff intended no gift to the son, but intended to have title transferred into her own name as soon as she should become a naturalized citizen. She became such in 1940.

After the vessel was completed, the builder, apparently as the managing owner or an agent, in order to obtain enrollment and license for the vessel, made oath under U. S. C. Title 46, §§ 254, 259, that the son owned one sixteenth of the vessel. The son furnished none of the purchase money. The plaintiff paid $2,500 at the time of purchase, and was given credit for the balance of $500, which she later paid out of her share of the earnings of the vessel.

Ever since the vessel was launched in 1927, she has been employed in the fisheries. The plaintiff has been paid one sixteenth of the earnings, without question, until 1939. In that year the check for the plaintiff's share of the earnings was drawn to the order of the son, who indorsed it over to the plaintiff. He demanded ten per cent of the amount, however, and the plaintiff refused to pay him. This was repeated in 1940. In 1941 the plaintiff asked him to convey title to her, and he refused, claiming to be the owner. Then the plaintiff brought this bill on January 12, 1942.

The defendant Brown, the ship's husband or agent, is a

mere stakeholder of the earnings of the one-sixteenth interest in 1941. He makes no defence, but holds the money subject to the order of the court.

Upon these facts a final decree was entered, adjudging that the defendant Braga holds the legal title in trust for the plaintiff, ordering a conveyance to her, and ordering the defendant Brown to pay to her the earnings in his hands. The defendant Braga appealed.

Apart from the Federal statutes, the facts show a typical case of resulting trust, like that in *Cooley* v. *Cooley*, 172 Mass. 476. The whole purchase price was paid out of the plaintiff's own money or out of the earnings of the share to which equitably she was entitled. It is immaterial that the whole price was not paid at once. *Lynch* v. *Lynch*, 249 Mass. 543, 546. *Moat* v. *Moat*, 301 Mass. 469, 472. At the moment when the legal title passed to the son, in consideration of $2,500 of the plaintiff's money and her obligation to pay $500 more, a resulting trust in her favor arose. *Moat* v. *Moat*, 301 Mass. 469, 472, and cases cited.

The defendant Braga contends that under Federal statutes no trust in an interest in a vessel could result in favor of an alien.

"Vessels registered pursuant to law and no others, except such as shall be duly qualified according to law for carrying on the coasting or fishing trade, shall be deemed vessels of the United States, and entitled to the benefits and privileges appertaining to such vessels." If owned by individuals, a vessel retains the status of a "vessel of the United States" only while it continues to be wholly owned by a citizen or citizens of the United States. U. S. ·C. Title 46, § 221. "Vessels of twenty tons and upward, enrolled in pursuance of this chapter, and having a license in force, or vessels of less than twenty tons, which, although not enrolled, have a license in force, as required by this chapter, and no others, shall be deemed vessels of the United States entitled to the privileges of vessels employed in the coasting trade or fisheries." § 251. The license may be for the coasting trade or for a particular kind of fishery, and it continues in force for one year unless sooner the ownership or the employ-

ment of the vessel changes. §§ 260–275. *United States* v. *The Paryntha Davis,* 1 Cliff. 532, Fed. Cas. No. 16,003. To obtain enrollment and license, the managing owner or his agent must make oath as to the ownership of the vessel. § 254. A vessel owned by individuals cannot be enrolled unless all are citizens of the United States. §§ 252, 11. Registry may be exchanged for enrollment, and vice versa. § 264.

What was said in *Badger* v. *Gutierez,* 111 U. S. 734, 736, 737, is still a summary of the Federal statutes. "Every vessel of the United States, which is afloat, is bound to have with her from the officers of her home port, either a register or an enrolment. The former is used when she is engaged in a foreign voyage or trade, and the latter when she is engaged in domestic commerce, usually called the coasting trade. If found afloat, whether by steam or sail, without one or the other of these, and without the right one with reference to the trade she is engaged in, or the place where she is found, she is entitled to no protection under the laws of the United States, and is liable to seizure for such violation of the law, and in a foreign jurisdiction or on the high seas, can claim no rights as an American vessel."

A registered vessel "shall be forfeited" for failure to make known the transfer to an alien of any interest in her, the transfer of any such interest to any person making void the existing registry; but innocent part owners are protected. §§ 41, 38, 39, 23, 808. If an owner, agent or attorney commits perjury to obtain registry, "there shall be a forfeiture of the vessel . . . or of the value thereof." §§ 21, 33. These sections do not apply to an enrolled vessel. *United States* v. *The Sciota,* Fed. Cas. No. 16,240.

The only material causes for forfeiture applicable to an enrolled vessel are the following. (a) A vessel "shall be liable to seizure and forfeiture" for proceeding on a foreign voyage without registry. § 278. *The Alex Clark,* 294 Fed. 904. *The Esther M. Rendle,* 7 Fed. (2d) 545. *The Winnie,* 65 Fed. (2d) 706. (b) A vessel "shall be liable to forfeiture" for obtaining or using registry, enrollment or license "know-

ingly and fraudulently." § 60, as amended by Act of August 5, 1935, c. 438, Title III, § 310 (49 U. S. Sts. at Large, 528). *United States* v. *Worthington, Inc.* 117 Fed. (2d) 936. (c) A licensed vessel "shall be forfeited" for the transfer to an alien or a nonresident of any interest in her, or for her employment in a trade other than that for which she is licensed. § 325. *United States* v. *The Paryntha Davis*, 1 Cliff. 532, Fed. Cas. No. 16,003. *United States* v. *Picou*, 71 Fed. (2d) 854. *The Snapper King*, 127 Fed. (2d) 490. Guilty knowledge on the part of any owner need not be proved. *United States* v. *The Ruth Mildred*, 286 U. S. 67. *The Mineola*, 16 Fed. (2d) 844. *The Pilot*, 43 Fed. (2d) 491, 493. *United States* v. *American Motor Boat K–1231*, 54 Fed. (2d) 502. *The Julia Davis*, 72 Fed. (2d) 370. A transfer to an alien offends the statute although it makes the license void under § 266. *The Two Friends*, 1 Gall. 118, Fed. Cas. No. 14,289. Compare *United States* v. *The Sciota*, Fed. Cas. No. 16,240.

We assume in favor of the defendant Braga that ownership by an alien of an equitable interest offends the statute as much as his ownership of a legal interest. *Weston* v. *Penniman*, 1 Mason, 306, Fed. Cas. No. 17,455. *Scudder* v. *Calais Steamboat Co.* Fed. Cas. No. 12,566. *Hall* v. *Hudson*, 2 Sprague, 65, Fed. Cas. No. 5,935. *United States* v. *Gilbert*, 126 Fed. (2d) 206. We assume also that where the statute provides that the vessel "shall be forfeited," those words mean "shall ipso facto be forfeited," and that seizure, libel and condemnation only declare and confirm a forfeiture already effected. *The Mary Celeste*, 2 Lowell, 354, Fed. Cas. No. 9,202. *The Kate Heron*, 6 Sawyer, 106, Fed. Cas. No. 7,619. *United States* v. *Hamilton*, Fed. Cas. No. 15,289. *The Monte Christo*, 6 Bened. 148, Fed. Cas. No. 9,719. *The Fredericka Schepp*, 195 Fed. 623. *The Kathryn*, 50 Fed. (2d) 193. *The Rethalulew*, 51 Fed. (2d) 646. *The Sterling*, 65 Fed. (2d) 439. *United States* v. *Pacific Finance Corp.* 110 Fed. (2d) 732.

We find nothing in the record to show that the vessel was ever forfeited or liable to forfeiture. It does not appear that enrollment or license was obtained "knowingly and fraudu-

lently." § 60, in its original form and as amended. And clearly no interest in the vessel was transferred to the plaintiff, an alien, while the vessel was a "licensed vessel." § 325.

Whatever may be the bounds of Federal power, Federal statutes have never attempted to regulate vessels until they are afloat on navigable waters. *The Montello*, 11 Wall. 411, 415; *S. C.* 20 Wall. 430. *United States* v. *Holt State Bank*, 270 U. S. 49, 56. *Stewart & Co.* v. *Rivara*, 274 U. S. 614. *Detroit Trust Co.* v. *The Thomas Barlum*, 293 U. S. 21. *United States* v. *Appalachian Electric Power Co.* 311 U. S. 377. See also *Dunham* v. *Lamphere*, 3 Gray, 268; *Johnson* v. *Merrill*, 122 Mass. 153; *Commonwealth* v. *Breakwater Co.* 214 Mass. 10; *Commonwealth* v. *Kemp*, 254 Mass. 190. Before registry or enrollment, and while a vessel is under construction in a shipyard, it is a chattel governed exclusively by State laws, and there is no legal impediment to ownership by an alien. *People's Ferry Co.* v. *Beers*, 20 How. 393. *Edwards* v. *Elliott*, 21 Wall. 532. *The Robert W. Parsons*, 191 U. S. 17, 25. *The Winnebago*, 205 U. S. 354, 363. *In re Empire Shipbuilding Co.* 221 Fed. 223. *The Lincoln Land*, 295 Fed. 358. *North River Coal & Wharf Co.* v. *McWilliams Bros. Inc.* 28 Fed. (2d) 513. *Perkins* v. *Emerson*, 59 Maine, 319. *Stinson* v. *Minor*, 34 Ind. 89. *Arnold* v. *Eastin's Trustee*, 116 Ky. 686. *Atlas Imperial Diesel Engine Co.* v. *Criscuolo*, 32 Cal. App. (2d) 244. See also *Atlantic Transportation Co. Inc.* v. *Alexander Shipping Co. Inc.* 261 Mass. 1.

The plaintiff's equitable title was complete and perfect before the vessel was launched and before any Federal prohibition against ownership by an alien applied. It does not appear that that equitable title has ever been divested, or that any legal cause for divesting it exists. If there was any violation of law, the vessel, not any owner, was the offender, and the penalty was forfeiture. *United States* v. *The Ruth Mildred*, 286 U. S. 67. *J. W. Goldsmith, Jr.-Grant Co.* v. *United States*, 254 U. S. 505. *Various Items of Personal Property* v. *United States*, 282 U. S. 577, 581. It does not appear that the builder committed any crime in procuring enrollment and license. If he had done so, and was agent

for the plaintiff, she was not punishable unless she countenanced or participated in his act. *Commonwealth* v. *Anthony*, 306 Mass. 470, 478.

Even though the plaintiff herself be deemed a personal wrongdoer, it does not follow that she must be denied relief.

Relief is sometimes given to a morally innocent party to an illegal transaction, or even to a party less guilty than another. *Bernhardt* v. *Atlantic Finance Corp.* 311 Mass. 183, 188. Even a party guilty of intentional violation of law does not lose the right to relief, where his cause of action arises independently of his unlawful conduct, and relief will not further any unlawful scheme. *Bourne* v. *Whitman*, 209 Mass. 155, 168–170. *Pelosi* v. *Bugbee*, 217 Mass. 579. *Hazleton* v. *Lewis*, 267 Mass. 533, 540. *American Agricultural Chemical Co.* v. *Robertson*, 273 Mass. 66, 78, 79. *Potter* v. *Gilmore*, 282 Mass. 49, 56, 57. *Bauer* v. *Bond & Goodwin Inc.* 285 Mass. 117, 119. *Baggs* v. *Hirschfield*, 293 Mass. 1, 2  *Zytka* v. *Dmochowski*, 302 Mass. 63, 65. *Paula* v. *Soares*, 304 Mass. 450. *Zak* v. *Zak*, 305 Mass. 194. Williston, Contracts (Rev. ed. 1938) § 1739. And the rule that one seeking relief must come into equity with clean hands relates only to conduct in the matter concerning which relief is sought. *New York, New Haven & Hartford Railroad* v. *Pierce Coach Lines, Inc.* 281 Mass. 479, 482. *Westhampton Reservoir Recreation Corp.* v. *Hodder*, 307 Mass. 288, 291, 292. *Lang* v. *Giraudo*, 311 Mass. 132, 138. The plaintiff's equitable title antedated, and arose independently of, any possible violation of law.

Even if part of the purchase price was ultimately paid out of money earned by the vessel illegally, that is immaterial. For a violation of law, the "vessel with her tackle, apparel, and furniture, and the cargo, found on board her, shall be forfeited." § 325. Compare § 60, as amended by Act of August 5, 1935, c. 438, Title III, § 310 (49 U. S. Sts. at Large, 528). No statute forfeits the earnings. However illegally earned, the money used to pay the balance of the purchase price was voluntarily paid to the plaintiff out of the earnings, and became hers by a transaction which no one could rescind. *Gordon* v. *Levine*, 197 Mass. 263. *Pelosi* v. *Bugbee*, 217 Mass.

579. *Bauer* v. *Bond & Goodwin Inc.* 285 Mass. 117, 119. That money never belonged to the son, for he had no beneficial interest in the vessel.

The defendant Braga relies on *Duane* v. *Merchants Legal Stamp Co.* 231 Mass. 113, 123, and *Fouquette* v. *Millette*, 310 Mass. 351. In the former case the plaintiff, though ignorant of the unlawful nature of the business, was seeking the profits of violations of law, and of course his innocence was immaterial. In the latter case, the plaintiff's intestate was not innocent, and the transfer of motor vehicles which the plaintiff sought to undo was made in pursuance of the illegal scheme and was not independent of it. Those cases do not require a denial of relief to the plaintiff in the present case, even though the plaintiff herself be deemed a wrongdoer.

As to the earnings for the year 1941, they were earned long after the son became of age, and knew of the plaintiff's interest in the vessel. If there was unlawful conduct, he shared in it. We need not consider whether the plaintiff could recover the earnings from an unwilling ship's husband or managing owner, or from the defendant Braga if he had been paid them. *Duane* v. *Merchants Legal Stamp Co.* 231 Mass. 113, 123. *Joe Gouy Shong* v. *Joe Chew Shee*, 254 Mass. 366, 370. *Fouquette* v. *Millette*, 310 Mass. 351. In the early case of *Cambioso* v. *Maffett*, 2 Wash. C. C. 98, Fed. Cas. No. 2,330, an accounting was denied of the profits of a partnership which registered its vessels in the name of a citizen partner only, where an alien was also a partner. Here the defendant Brown makes no defence, and holds subject to the order of the court. By its decree, the Superior Court ordered the money paid to the plaintiff. The appellant is entitled to have that decree revised only so far as it infringes his rights. *Coe* v. *Coe*, 313 Mass. 232, 234. He had no rights in the earnings, for he had no beneficial interest in the vessel. He cannot avail himself of a defence that Brown might have made but did not make.

It is true that the court of its own motion may deny relief because of illegal conduct. *Cohen* v. *Nagle*, 190 Mass. 4, 13, 14. *James J. Sullivan, Inc.* v. *Cann's Cabins, Inc.* 309 Mass. 519, 521. *Barsky* v. *Hansen*, 311 Mass. 14, 17. *Gleason* v.

*Mann*, 312 Mass. 420, 422.   But the earnings must have an owner, and in view of the innocence of the plaintiff we do not think that public policy requires us to deprive her of them.

*Decree affirmed with costs.*