## THE SCANDANAVIA II.

(District Court, D. Maryland. May 23, 1919.)

SHIPPING ☞16—FRAUDULENTLY OBTAINING AND USING CERTIFICATE—ENFORCEMENT OF FORFEITURE—DISMISSAL OF LIBEL FOR DOUBT.

 Where there is at least a doubt as to whether Act Sept. 7, 1916 (Comp. St. §§ 8146a–8146r[8]), creating the United States Shipping Board, in any wise affected the status of small craft under 20 tons, libel by the United States to enforce by forfeiture the highly penal provision of Rev. St. § 4189 (Comp. St. § 7775), for fraudulently obtaining and using any certificate of registry, enrollment, or license for a vessel, will ·be dismissed.

In Admiralty. Libel by the United States against the Scandanavia II. Libel dismissed. .

Samuel K. Dennis, U. S. Atty., of Baltimore, Md.

Edwin H. Brownley and John L. V. Murphy, both of Baltimore, Md., for respondent.

ROSE, District Judge. The United States seeks the forfeiture of the gasoline screwboat Scandanavia, because a license was fraudulently obtained and used for it.

There is little question as to the facts. Prior to 1915, a firm trading as Bie & Schiott had been extensively engaged in the shipchandlery business at several American ports. In the year it was succeeded by a New Jersey corporation of the same name, the majority of whose stock was alien owned. In the fall of 1917 it had use for a gasoline launch, and contracted with a boat builder of Camden, N. J., to construct one for it. He did so, and the corporation paid him for it. When it was finished and ready for delivery, he made out his carpenter's certificate, and at the request of the corporation stated that the owner was one John Wilson. At that time Wilson, who has died since the institution of these proceedings, was a bookkeeper in the employ of the Bie & Schiott Company. He had no interest in the boat and had paid nothing for it. As it was of burthen of upwards of 5 tons and less than 20, it was licensed in his name; he making oath that he was its sole owner.

In September, 1918, the United States Food Controller revoked the company's license as a food dealer. In consequence, or partly in consequence, of such revocation, it voted on October 19th, to dissolve. The claimant, Gulbranson, took over the Baltimore and Norfolk branches. He is of Norwegian birth, but was naturalized in 1917. He had been treasurer of the corporation since its formation,

---

and had been associated with its predecessor firm for a number of years. He needed a boat like the Scandanavia II for use in this port, and on October 21, 1918, at his request, it was sent from New York to Baltimore; he agreeing to pay $2,300 for it. When it arrived here, its captain called at the custom house, bringing its papers with him, and subsequently the claimant himself came and requested that the boat be transferred to him. It was pointed out that it was in the name of John Wilson, and that before it could be documented in the name of any one else a proper bill of sale must be executed. Gulbranson, on the 21st of October, presented a simple bill and receipt from Wilson, but was told by the custom house official that a more formal instrument was required. Thereupon a regular bill of sale was executed by Wilson and sent to claimant. He knew that Wilson had never owned any interest in the boat, and that more than 51 per cent. of the stock of the Bie & Schiott Company was, and always had been, owned by aliens. Some of these facts having come to the attention of the custom house officials, they refused to make the transfer. Nevertheless, on December 6, 1918, the claimant sent his check to Wilson for $2,300, in payment for the boat, and Wilson indorsed this check to Bie & Schiott Company.

It is quite clear that Gulbranson was a purchaser with notice. It is therefore unnecessary to inquire as to whether the law is better stated in The Monte Christo, Fed. Cas. No. 9719, or in the Fredericka Schepp (D. C.) 195 Fed. 623.

Section 4189 of the Revised Statutes (Comp. St. § 7775) provides the penalty of forfeiture for the fraudulent obtaining and using of any certificate of registry, enrollment, or license. The government says this statute applies. The claimant says it does not, because a certificate is not obtained fraudulently, unless it is secured for some one to whom it could not have been lawfully issued, had the true facts been known. Weston v. Penniman, Fed. Cas. No. 17,455; Scudder v. Calais S. S. Co., Fed. Cas. No. 12,566.

The first Congress in 1789 provided that no ship should be registered or enrolled unless it was wholly owned by a citizen or citizens of the United States. Act Sept. 1, 1789, c. 11, 1 Stat. 55. So anxious was it to prevent evasions of its policy in this respect that it withheld the privilege of registry from any ship owned in whole or in part by a citizen of the United States who usually lived abroad, unless he was an agent or a partner of some firm of American citizens actually carrying on business in the foreign country in which he was living.

By Act March 3, 1825, c. 99, 4 Stat. 129, provision was for the first time made for the documenting of vessels owned by American corporations; but even then, by its fifth section (Comp. St. § 7717), the president or the secretary of the corporation was required to make oath that, to the best of his knowledge and belief, no part of the ship was owned by any foreigner, and this section remained the law for 33 years, until it was repealed by Act June 11, 1858, c. 145, 11 Stat. 313. Since then the executive departments have granted documents to vessels owned by a corporation organized under the laws of any of the states, without inquiry as to the nationality of its stockholders.

Congress, from time to time, gave more or less sanction to this practice. Act May 28, 1896, c. 255, 29 Stat. 188 (Comp. St. §§ 7707, 7708). In 1911, Attorney General Wickersham officially advised the Secretary of Commerce and Labor that an American corporation, as respects the Shipping Acts, was an American citizen, no matter how large a proportion of its stock was owned by aliens. War is no respecter of legal fictions, and, under stress of the world conflict, Congress, when it came, in 1916, to create the United States Shipping Board, declared that for the purpose of that act (Act Sept. 7, 1916, c. 451, § 2, 39 Stat. 729 [Comp. St. § 8146aa]), no corporation should be deemed to be a citizen of the United States unless the controlling interest therein was owned by citizens of the United States. Since the passage of the last-mentioned act, the Bureau of Navigation has refused to register, license, or enroll any vessel belonging to a corporation the majority of whose stock is not owned by American citizens.

It was doubtless because of this ruling that the Bie & Schiott Company falsely represented Wilson to be the owner of the Scandanavia II. Nevertheless the claimant argues that, whatever may have been the deceitful purpose of Wilson and the officials of the company which employed him, they did nothing which was in law fraudulent, because he says that the act of 1916 concerns itself with only two of the three classes of vessels of the United States, namely, those which are registered, and those which are at once licensed and enrolled, and has nothing to do with those which, because they are under 20 tons burthen, are licensed, but not enrolled. He relies upon the phrasing of the third paragraph of the ninth section of the Shipping Board Act (Comp. St. § 8146e), already mentioned. In that it is said:

"When the United States is at war * * * no vessel, registered *or* enrolled *and* licensed under the laws of the United States, shall, without the approval of the board, be sold, leased, or chartered to any person not a citizen of the United States."

The presumption would be strongly against the federal Legislature having intended to limit its definition of citizens in the manner now claimed, were it not that Congress, two years later, seems to have thought that it had. By the act of July 15, 1918, the word "documented," when used in connection with ships, is defined to mean: "Registered, enrolled or licensed under the laws of the United States." The report of the House committee on merchant marine and fisheries (No. 568, House, 65th Congress, Second Session) declares that the purpose in so doing was to "bring under the act vessels licensed, but not enrolled (i. e., ships under 20 tons). In view of the military value of even small vessels, this change is considered important." The report of the House committee was adopted by the Senate committee on commerce as a part of its report. Senate, 536, 65th Congress, Second Session.

In the light of this fact, there is at least a doubt as to whether the act of 1916 in any wise affected the status of such small craft. The provision here sought to be enforced is highly penal.

The libel will be dismissed.