BADGER, Collector, v. GUTIEREZ'S Administratrix.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF LOUISIANA.

Submitted April 7th, 1884.—Decided May 5th, 1884.

*Collector of Customs— Vessels.*

The papers of a vessel not under seizure in the hands of a collector of customs, but not deposited with him for purpose of entry or clearance, may not be detained by him without subjecting him to an action for the resulting damage.

When a vessel or its owner becomes subject to a statutory penalty for taking out improper papers, that does not justify a collector of customs in withholding from the vessel the papers to which it is lawfully entitled.

The facts constituting the case are stated in the opinion of the court.

*Mr. Solicitor-General* for appellant.

*Mr. J. Ward Gurley, Jr.,* for appellee.

MR. JUSTICE MILLER delivered the opinion of the court.

This is an action by defendant in error against Badger, plaintiff in error, who was collector of the port of New Orleans, for the wrongful seizure and detention of the license, enrolment, shipping articles, and other papers of the schooner Theresa G, of which he was owner. The plaintiff on the trial recovered a verdict for the sum of $3,000 damages, and on his remitting $1,000 of the verdict, a judgment was rendered for the remainder with costs.

A bill of exceptions sets forth the facts in the case as follows:

" Be it remembered that on the trial of this cause before a jury there was evidence introduced tending to show that the schooner Theresa G, whereof Frank Gutierez was master, sailed from Havana on 9th September, 1879, bound for the port of Shieldsborough; that on or about the 29th September, 1879, said vessel arrived in Grand Caillon Bayou, an inlet of the Gulf of Mexico, lying within the customs collection district of the Teche, that the

arrival of said vessel was not reported to collector of the district of the Teche, but that on the 28th October, 1879, while said vessel was lying in said bayou and in said district of the Teche, Gutierez reported the arrival of the vessel to collector's office at Shieldsborough, which was the port of her registration, and in the absence of the collector of that port, a deputy collector received from Gutierez the foreign register of said vessel, and issued to him a coasting license and enrolment.

" That on the 31st October the collector at Shieldsborough wrote to General Badger, collector port New Orleans, stating that said papers had been issued improperly in his absence, and requesting him, Badger, to get them from Gutierez ; that on the 1st November, 1878, J. M. Tomlinson, chief clerk of Badger, collector, acting under instructions from Badger, found Gutierez for the purpose of inspection, obtained the papers issued at Shieldsborough from Gutierez ; that from this date Badger, acting under the advice or instruction of the Secretary of the Treasury, refused to deliver the ship's papers to Gutierez, though demanded from him on the same day or subsequently.

" That on the 4th November, 1879, on information given by Badger, collector, the Theresa G was libelled for violation of sec. 2774, R. S., on part of master, and seized by marshal on 16th November ; that on the 18th November, 1879, Gutierez filed his claim and bonded the vessel, and she was delivered up to him.

" That on the 18th November, 1879, Gutierez demanded from Badger the papers taken by Tomlinson, which Badger refused to deliver ; that thereupon Badger reported the facts to the Secretary of the Treasury, who directed Badger to retain the papers issued at Shieldsborough, and subsequently directed Badger to send papers to Washington, D. C., which was done.

" That on 18th November, 1879, Badger stated to Gutierez that the Theresa G might be brought from Caillon Bayou to New Orleans by SW. Pass, Mississippi River, and he, Badger, thereupon sent to boarding officers written instruction to let vessel pass to New Orleans, but that Gutierez declined to bring his vessel on such permission ; that this permission was declined by Gutierez on the ground that he must have in his possession documentary permission before he could safely navigate his vessel ; that on January 9th, 1880, written permission was given by Badger, collector, to master of the Theresa G to bring said vessel

from Caillon Bayou to Lookout Station, in the collection district of New Orleans ; that said vessel was thereupon brought to Lookout Station, and that on the 24th day of January, 1880, collector Badger granted clearance papers to said vessel.

" Be it remembered further, that at the conclusion of said trial the court charged the jury as follows : That the papers of the vessel were essential to her prosecuting navigation, and that it was not competent for the collector of the Teche district to have given to the Theresa G clearance papers under which she could have proceeded without the production of the ship's papers detained by Badger ; that the defendant had the right to seize the ship, and for such seizure a judgment in another cause had established that there was probable cause, but that if the jury found from the evidence that the defendant detained the papers of the ship at a time when the ship was not under seizure, and which was not deposited with him for the purpose of the vessel's making an entry or clearance, that for such detention the plaintiff could recover damages ; that this recovery could be had even if the papers had been improperly issued by the collector at Shieldsborough ; that detention of the ship's papers, without giving her others, left her powerless to pursue any navigation of a vessel. To this instruction, and to each clause of the same, the attorney for the defendant, then and there and in the presence of the jury and before they withdrew to deliberate upon the case, excepted."

This instruction presents the main question to be decided. Other prayers for instructions were asked by defendant which were either modified or refused. All of these were based upon the idea that because the master of the schooner had arrived at Grand,Caillon Bayou and failed to report his arrival to the collector of the Teche district in due time, she, therefore, became liable to seizure, and the defendant could take her enrolment and license, however obtained, and detain them and also her register, as long as it suited him, or that for some other irregularity in issuing them he could do the same thing.

It is to be understood that every vessel of the United States, which is afloat, is bound to have with her from the officers of her home port, either a register or an enrolment. The former is used when she is engaged in a foreign voyage or trade, and

the latter when she is engaged in domestic commerce, usually called the coasting trade. If found afloat, whether by steam or sail, without one or the other of these, and without the right one with reference to the trade she is engaged in, or the place where she is found, she is entitled to no protection under the laws of the United States, and is liable to seizure for such violation of the law, and in a foreign jurisdiction or on the high seas, can claim no rights as an American vessel.

To seize and detain these papers, therefore, is to expose her to numerous evils, and, in fact, to prevent her use by her owners, and, as the mildest evil, to tie her up so long as the detention of her papers lasts. It is to be observed, that when he procured the enrolment and license at Shieldsborough, the owner gave up his register, so that when the license and enrolment were taken from him, his vessel was left without any legal evidence whatever of her right to pursue either domestic or foreign trade. It is also to be mentioned, that it is the right of the owner to exchange a register for an enrolment, and where this is done, the register is necessarily delivered to the officer who issues the enrolment.

If this enrolment was for any reason improperly issued, there must be methods by which the act may be set aside or cancelled, or a penalty enforced for its improper use. In such case, the owner would undoubtedly be entitled to a proper issue of another enrolment, or to a return of his register.

In no event, that we can conceive of, had the defendant a right to keep from him both his register and enrolment, and leave his vessel destitute of these indispensable evidences of her national character and right to pursue her vocation.

Nor do we think that the offence he committed of remaining in Caillon Bayou justified this detention of his ship's papers. For that offence the law prescribed a penalty, which the owner was made to pay. This prosecution for that violation of the law stood on its own ground and had its own penalty, which did not include a forfeiture or seizure of the papers of the vessel.

If plaintiff had voluntarily given up his enrolment there might have been some excuse for withholding it until matters

were made right concerning the alleged irregularity of the exchange of the register for a coasting license and enrolment. But even while withholding these latter papers he was clearly entitled to his register, which was refused on demand.

But it is also apparent that the enrolment came into Badger's possession by means equivalent to a forcible seizure against the will of plaintiff.

The chief clerk of Badger hunted up Gutierez, and under pretence of inspecting these papers obtained possession of them under instruction from Badger, and refused to return them on demand, as did Badger also.

Though the Secretary of the Treasury justified these proceedings, and acting under his advice Badger refused to deliver up any of the ship's papers for a considerable time, and they were finally sent to Washington, we do not see that this made his course in seizing and detaining the papers any the less a tort, for which the Secretary could not relieve him from responsibility.

We see no error in the record, and

*The judgment of the Circuit Court is affirmed.*