### LOCKWOOD *et al.* v. BARTLETT *et al.*

(*Supreme Court, General Term, First Department.* November 7, 1889.)

1. ACTIONS FOR TORTS—PARTIES—VERDICT.
   In an action for wrongful detention of plaintiffs' goods the fact that the jury disagree as to one defendant does not affect their verdict against the others, and is not prejudicial to the latter, though the complaint alleges a conspiracy between all of the defendants.

2. CUSTOMS OFFICERS—UNLAWFUL SEIZURE OF IMPORTED GOODS.
   Where the importer of articles which are not dutiable demands their entry, the collector should grant a permit for their landing, under Rev. St. U. S. § 2826, and seizure of the goods by him, and sending them to public stores to be disinfected, is unauthorized, and does not render them liable for the expenses incurred thereby.

3. SAME.
   Such an act is not authorized by Rev. St. U. S. §§ 4792, 4793, which require customs officers to aid in the execution of the health laws of the state, and authorize collectors, in case a vessel is prevented by the health laws from coming to the port of entry, to grant a permit for unloading the cargo at some other place where the health laws permit, where the goods were discharged at the regular port of entry.

4. SAME.
   Where the health officer had not ordered the goods to be seized and disinfected, the collector, and all persons detaining the goods for the payment of the unauthorized charges, are liable therefor in damages.

5. SAME.
   Defendants, who detained the goods, claiming a lien for disinfecting them, after permits for their delivery had been issued, cannot allege, in an action for such detention, that they had no control of the goods because they were in bonded warehouses, especially as the goods, not being dutiable, were not held as bonded goods.

6. SAME—TORT OF PARTNER.
   Where one partner acted for the firm in demanding and collecting the illegal charges, every member of the firm is liable for the damage.

7. SAME—DAMAGES.
   Only actual damages can be recovered for such detention.

Appeal from circuit court, New York county.

Action by William Lockwood and another against Edward B. Bartlett and others. Judgment for plaintiffs, and defendants appeal.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*William W. Goodrich,* for appellants.   *W. Bourke Cochrane,* for respondents.

VAN BRUNT, P. J.   The complaint in this action in brief alleged that the defendants entered into a conspiracy to have certain of the plaintiffs' rags which they had imported declared infectious so that they might be disinfected under a process used by the defendants E. B. Bartlett & Co.; that the rags were taken possession of by the defendants Smith and Bartlett & Co., and were by Bartlett & Co. partially subjected to a pretended process of disinfection, and who refused to deliver the rags to the plaintiffs until their charges were paid, and which the plaintiffs were compelled to pay to get possession of the rags.   The defendants, by their answers, denied any conspiracy, and the firm of Bartlett & Co. alleged that they simply held the rags until their charges were paid. The facts developed upon the trial seem to be substantially these:   The plaintiffs, doing business under the firm name of Lockwood & McClintock, imported in the ship Vigilant, from Japan, 2,920 bales of rags, which arrived in the port of New York about May 30, 1885, and upon the same day the vessel was passed by the health officer, and allowed to proceed to the cities of New York or Brooklyn for the purpose of discharging her cargo.   It is claimed by the counsel for the appellants that this permit allowed the vessel to proceed to New York, rags excepted.   It is difficult to see how this construction can be put upon the permits, because there is no intention manifested that the ship should discharge the rags before proceeding, and consequently it must have been intended that the vessel should take up to the city the rags.   An inspection of the permits shows that this is the case.   The words "rags excepted" are used in that part of the permits which describes the nature of the cargo.   The words are "cargo general (rags excepted.)"   It would appear that rags did not come under the definition of "general cargo," and hence was put upon the permit the fact that the cargo was general, except the rags.   On June 1st a permit was granted by the health authorities of the city of New York to land these rags.   The plaintiffs then went to the custom-house to enter the rags pursuant to the law regulating the importation of goods, and although they were free goods, not liable to any duty, the collector declined to receive the entry.   On the 3d of June the collector directed all goods upon this vessel for which no permit shall have been received to be sent to the Baltic stores, kept by E. B. Bartlett & Co.   In the mean time the health officer of the port appears to have come to the conclusion that the rags should be disinfected, and on the 9th of June the collector directed the rags to be taken for disinfection to the Baltic stores, being the stores of defendants Bartlett & Co., to which stores they were lightered, and where, it is claimed, they were disinfected.   The plaintiffs demanded their rags, but Bartlett & Co. refused to deliver the rags to the plaintiffs unless the lighterage, storage, and disinfecting charges should be paid.   The plaintiffs also imported by the ship Baltaglia 150 bales of rags, which arrived at the port of New York, June 6, 1885.   The health officer having certified that these rags might be disinfected at Robbins' reef, where the same parties who ran the disinfection at the Baltic stores had established themselves, unless it could be done at the Baltic stores, the collector ordered their transfer to Robbins' reef for disinfection, where, it is claimed, they were disinfected and there transferred to the Baltic stores, where Bartlett & Co. claimed to hold them until charges for lighterage, storage, and disinfection were paid. To get possession of these rags the plaintiffs were compelled to pay these charges, and they then brought this action to recover the damages which they had sustained by the unauthorized acts of the defendants.   Upon the trial the

jury found a verdict against Bartlett & Co. for $8,000, but disagreed as to the defendant Smith. A judgment was thereupon entered against Bartlett & Co., and from such judgment this appeal is taken.

It is urged as one of the grounds of appeal that the court erred in taking the verdict in the form which it did; that the jury might have found a verdict against Bartlett & Co. and in favor of Smith, or until they either found for or against Smith no verdict could be received. There is no question but that the plaintiffs could have submitted to a nonsuit, and proceeded against Bartlett & Co. alone. It is true that there are allegations in the complaint of a conspiracy between Smith and Bartlett & Co., but these allegations were mere surplusage. The defendants were proceeded against as wrong-doers, and they could have been proceeded against severally as well as jointly. If Bartlett & Co. had been sued upon the same allegations as those contained in the complaints, and Smith had not been made a party, they could not have objected. This being the case as far as Bartlett & Co. are concerned, it is immaterial whether Smith is or not charged, and because the jury have disagreed as to Smith they are deprived of no rights because they cannot claim that Smith should contribute. The plaintiffs, by their action, may have released Smith from any further claim in this action, but, if they have, it is of no consequence to Bartlett & Co., as has been seen.

The main question, then, which is presented by this appeal is, were all the proceedings by which the charges claimed by Bartlett & Co. were incurred, without the authority of law? It is sought to justify the action of the collector because of the provisions of the Revised Statutes of the United States, which authorize the collector to take possession of unclaimed merchandise, and store the same in any private bonded warehouse, such as the Baltic stores. But the difficulty with this claim of the defendants is that this merchandise was not only not unclaimed, but very much claimed. The plaintiffs demanded its entry. It was not liable to the payment of any duties, and it was the duty of the collector, under section 2826, to grant a permit for the landing thereof. Where the owner was claiming possession of his property, demanding a permit for the landing, it being confessedly free and not liable to duty, it seems to have been the duty of the collector to have granted the necessary permits, and his seizure of the goods, and the causing them to be lightered to the Baltic stores, was an unauthorized act, and for the expenses incurred in the performance of that act certainly no person could be allowed to hold the goods from their owner.

Neither can the acts of the collector be justified by sections 4792 and 4793 of the statutes. By section 4792 officers of the customs are requested to observe the health laws of any state, and are required to aid in their execution, and by section 4793, in case a vessel by such laws is prevented from coming to the port of entry or delivery by law established in any collection district, the collector may grant his permit for the unloading of the cargo at some other place, where such health laws permit. In these sections no power is found to do anything except in aid of the health authorities in the performance of their duties, and to authorize unloading at some other place in the collection district other than the regular port of entry. The goods in question were discharged at the port of entry, and no power under this last section is pretended to have been exercised.

The question seems, therefore, to resolve itself into this: Did the health officer direct the seizure of these goods, their conveyance to the Baltic stores, in the one case, and to Robbins' reef in the other, and their disinfection by the disinfecting company? If so, had he the power so to do, and to make the goods liable for the expenses so incurred? In view of the evidence in this case it is not at all necessary to discuss the power of the health officer, or as to whether he had or had not the power to do these various things, because it does not appear that the health officer directly ordered any one of these things

to be done, and it was for the want of this direct evidence, probably, that the jury, under the instructions of the court, did not find a verdict against the health officer. The learned court directly charged this proposition, and no exception was taken to it, and the only reason that the case could be allowed to go to the jury against the health officer was that there was some evidence from which the jury might have found collusion between Bartlett & Co. and such health officer. This evidence was not deemed sufficient by the jury, and so no verdict was rendered against the defendant Smith. This fact, however, in no way relieves Bartlett & Co. from the position in which they find themselves. The health officer not having directed this procedure, no shelter can be obtained from any supposed power which the health officer might possess. The collector, having no power to send any but unclaimed goods to the public stores, as has been seen, could not refuse a permit for these goods to land, and cause them to be sent to the public stores to be disinfected at the expense of the owner, and, if he did so, he as well as all other persons who detained the goods because of the non-payment of these unauthorized charges, became liable in damages for such unauthorized detention. This principle seems to be clearly established by the case of *Badger* v. *Gutieriez*, 111 U. S. 734, 4 Sup. Ct. Rep. 563. In that case a vessel had incurred a penalty for taking out improper papers. An application being made for proper papers, acting under instructions from the secretary of the treasury, the collector of the port, to whom application was made, seized and detained the papers submitted to him on the application for proper papers, and withheld from the vessel the papers to which it was lawfully entitled, and the court held that the collector was liable for the damages sustained. The act of the collector was entirely unauthorized, and hence his official character was no shield. The act of the collector in the case at bar being without authority, such act could confer no authority upon Bartlett & Co. to hold the goods until the charges incurred because of the unauthorized acts of the collector were paid.

It cannot be said that Bartlett & Co. did not have control of these rags because goods in bonded warehouses are in the custody and control of the collector. These goods were not held as bonded goods, no duties were to be collected upon them, and even after permits had been issued for delivery, Bartlett & Co. held the goods because of their alleged liens upon them. It was then Bartlett & Co. who were detaining the goods, and not the collector, and at any rate they then became responsible, and in fact they never did deliver the goods until these illegal demands were paid to them.

The claim that Bartlett alone was responsible, and not the other members of the firm, is untenable. Bartlett was acting for the firm, in the business of the firm, protecting its interest, and demanded and collected for the firm these illegal charges. Therefore every member of the firm became liable for the wrongs suffered by the plaintiffs.

The verdict, however, seems to have been excessive. It would seem that punitive damages could not be recovered, and simply damages of detention. The evidence showed a payment for alleged charges of $5,314.15, which the plaintiffs were entitled to recover back, with interest. The interest on this sum to the date of trial, April 29, 1887, was $491.45, making a total of $5,805.50. The verdict was for $8,000, leaving $2,194.40 as damages of detention. As there was no fall in the market price of the rags, the damages for detention could only be interest on the value of the rags detained. This value being $30,000, and the goods being detained from June 1st to October 9th, the interest for that period would be about $675, which alone could be recovered as damages of detention, and the verdict, therefore, must be reduced by $1,519.40.

It has not become necessary to consider the various exceptions to the evidence, as under the conceded facts the plaintiffs would be entitled to recover from Bartlett & Co. the amount for which this judgment is sustained, upon the plaintiffs stipulating to reduce the judgment by $1,519.40. The judgment

for the balance will be affirmed, without costs to either party. In case such stipulation is not given, the judgment must be reversed, and a new trial had, with costs to the appellants to abide the final event. All concur.