(C. D. 1036)

WESTERN OPERATING CORP. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 18, 1946)

*Jerome G. Clifford* (*George W. Israel* of counsel) for the plaintiff
*Paul P. Rao*, Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: The question before us here is whether or not duty at 50 per centum ad valorem assessed under section 466 of the Tariff Act of 1930 was properly levied upon the costs of certain repairs and the purchase of certain equipment necessitated by reason of the alteration of the oil tanker *Ulysses* so that it was suitable for use as a whale factory. The plaintiff contends that the vessel was not documented under the laws of the United States to engage in the foreign or coasting trade; that it was not intended to be so employed, nor was it actually employed in such trade; that the certificate of registry issued, entitled the vessel to engage solely in the whale fishery, and consequently the cost of equipment and repairs made in

(1)

such foreign port was not dutiable under the provisions of section 466. In answer to the protest the collector stated:

The Ulysses was at the time of the repairs operating under certificate of registry to engage *in foreign trade, and in the whale fisheries.* [Italics not quoted.]

The evidence establishes that the tanker *Ulysses* was issued a certificate of registry numbered 93 on January 18, 1937, to enter the service "Whale Fishery," and under authority of such documentation clearance papers were issued on January 19, 1937, to proceed in water ballast to the port of Gothenburg, Sweden. At that port the *Ulysses* was converted into a whale factory and entered upon that occupation, proceeding to Shark Bay and engaging in whale fishing during the 1937 season. Upon her return to the port of New York the collector assessed the duty in question. The evidence further establishes that the vessel, not being 75 per centum American owned, could not be authorized under the statutes to engage in the coasting trade.

Counsel for the plaintiff offered in evidence the record in *United States, Libellant,* v. *12,536 Gross Tons of Whale Oil ex The "Charles Racine,"* Respondent, in Admiralty No. 6332, in which a decision was rendered by the District Court of the United States for the Eastern District of Virginia, and reported in 29 Federal Supplement 262. The offer was made for the purpose of showing that the Government in that case had admitted the nature of the documentation of the S. S. *Ulysses.* Counsel for the Government objected to the admission thereof on the ground that the issues there did not involve the documentation of the S. S. *Ulysses.* Ruling on the motion was reserved by the court. We are of the opinion that the objection of the Government was well taken, and is hereby sustained, exception being granted to the plaintiff.

The Government officials testifying were not in accord as to whether or not a registered vessel, regardless of the specified service, was entitled to enter foreign trade by virtue of its register. Mr. Manfredi of the Marine Division, Port of New York, testified that the words "Whale fishery" typed on the certificate of registration after the word "Service" are predicated upon the oath taken by the master as to the character of the service the vessel enters or intends entering. This witness further testified that a certificate of registry never states whether or not a vessel is registered for the purpose of engaging in the foreign trade. If intended for such trade, the statement appearing after the word "Service" would read, "freight, passenger, whatever she is engaged in." (Record page 89.)

Mr. McDermott of the Clearance Division of the customhouse testified that if a ship were documented as being in the service of whale fisheries it could not be cleared to deliver a cargo to a foreign port. In that regard he stated:

Q. And are you familiar with the clearance of vessels in different trades, foreign trade, coastwise trade?

A. Yes.

Q. Could the "Ulysses," holding a document such as Plaintiff's Exhibit 1, have cleared for the foreign trade?

A. As long as there was no question brought as to the status of the vessel, according to the documentation she would request to clear for the whaling grounds, for the purpose of engaging in whale fisheries, I have no reason to withhold clearance. That would have to be determined by legal talent upstairs in the Law Division.

*     *     *     *     *     *     *

Q. No. I am asking you could she have cleared for foreign trade based on the document you have in your hand?

A. I would turn that back. (Record p. 92.)

*     *     *     *     *     *     *

X Q. Do you recall having issued clearance papers to any ship holding a certificate of registry, such as the certificate of registry before the court here, for that ship to carry cargo to a foreign country, whether of your own volition or whether you were instructed to do so by a superior officer?

A. If it is indicated and confined to a specific trade we have no authority to deviate from that. (Record p. 105.)

Assistant Deputy Commissioner of Customs Sweet testified that he was previously employed in the Bureau of Marine Inspection and Navigation (Department of Commerce) and was there in charge of the documentation of vessels; that all types of registers permit vessels to engage in foreign trade, and if unlimited, also in the coasting trade; that unlimited registers permit vessels to engage in any trade in which an American vessel may lawfully engage; limited registers issued to foreign-built vessels are restricted to foreign trade or trade with American possessions; restricted registers, issued to American-built vessels owned or partly owned by aliens, permit vessels to engage in the foreign trade or fisheries, but not in the coastwise trade; that an enrollment and license, issued to vessels built in the United States only and owned by citizens thereof, permit vessels to engage in the whale fisheries, cod fisheries, the mackerel fisheries, the coasting trade, and the coasting trade and mackerel fisheries; that the enrollment and license for the whale fisheries entitle the vessel to engage in whaling and nothing else, and the same is true with the cod fisheries; and that when enrolled and licensed for the mackerel fisheries, the vessel may take fish of any description. The witness further testified in respect to vessels engaged in the whale fisheries, as follows:

Q. Commissioner, in order for a vessel to engage in the whale fishery would an enrollment and license be sufficient or would it be necessary for such vessel to obtain a certificate of registry?

A. An enrollment and license for the whale fishery would be sufficient.

Section 466 of the Tariff Act of 1930, so far as pertinent, provides as follows:

## SEC. 466. EQUIPMENT AND REPAIRS OF VESSELS.

Sections 3114 and 3115 of the Revised Statutes, as amended by the Tariff Act of 1922, are amended to read as follows:

"SEC. 3114. The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon *a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade,* shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country * * *." [Italics not quoted.]

The United States Code, title 46, pertaining to registered and enrolled vessels of the United States, provides as follows:

§ 11. Vessels entitled to registry; coastwise trade; * * *

*Vessels* built within the United States and belonging wholly to citizens thereof; and vessels which may be captured in war by citizens of the United States and lawfully condemned as prize, or which may be adjudged to be forfeited for a breach of the laws of the United States; and seagoing vessels, whether steam or sail, which have been certified by the Bureau of Marine Inspection and Navigation as safe to carry dry and perishable cargo, wherever built, *which are to engage only in trade with foreign countries,* with the Philippine Islands, the Islands of Guam, Tutuila, Wake, Midway, and Kingman Reef, being wholly owned by citizens of the United States or corporations organized and chartered under the laws of the United States, or of any State thereof, the president and managing directors of which shall be citizens of the United States, *and no others, may be registered* as directed in this chapter and chapters, 3, 4, 5, 6, 7, 8, and 9. Foreign-built vessels registered pursuant to this section shall not engage in the coastwise trade: * * * [Italics not quoted.]

§ 221. Vessels of the United States and officers defined; officers to be citizens.

*Vessels registered pursuant to law and no others, except such as shall be duly qualified according to law for carrying on the coasting or fishing trade, shall be deemed vessels of the United States, and entitled to the benefits and privileges appertaining to such vessels;* but no such vessel shall enjoy such benefits and privileges longer than it shall continue to be wholly owned by a citizen or citizens of the United States or a corporation created under the laws of any of the States thereof, and be commanded by a citizen of the United States. [Italics not quoted.]

§ 251. Vessels of the United States.

*Vessels of twenty tons and upward, enrolled* in pursuance of sections 251–255, 258, 259, 262–280, 293, 306–316, 318, 321–330 and 333–335 of this title, *and having a license in force, or vessels of less than twenty tons, which, although not enrolled have a license in force,* as required by such sections, *and no others, shall be deemed vessels of the United States entitled to the privileges of vessels employed in the coasting trade or fisheries.* (R. S. § 4311.) [Italics not quoted.]

§ 252. Vessels which may be enrolled.

*In order for the enrollment of any vessel, she shall possess the same qualifications, and the same requirements in all respects shall be complied with, as are required before registering a vessel;* and the same powers and duties are conferred and imposed upon all officers, respectively, and the same proceedings shall be had in enrollment of vessels, as are prescribed for similar cases in registering; and vessels

enrolled, with the masters or owners thereof, shall be subject to the same requirements as are prescribed for registered vessels. (R. S. § 4312.) [Italics not quoted.]

§ 263. Form of license; coastal vessels of 5 tons or more; * * *

The form of a license for carrying on the coasting trade or fisheries shall be as follows:

"License for carrying on the (here insert 'coasting trade', 'whale fishery', 'mackerel fishery', or 'cod fishery', as the case may be.

* * * *Provided*, That vessels of five net tons and over entitled under the laws of the United States to be enrolled and licensed or licensed for the coasting trade may be licensed for the "coasting trade and mackerel fishery", and shall be deemed to have sufficient license for engaging in the coasting trade and the taking of fish of every description, including shellfish: *Provided further*, That the provisions of sections 310 and 311 of this title shall be, and are hereby, made applicable to vessels so licensed.

§ 264. Exchange of enrollment and registry.

The collectors of the several districts may enroll and license any vessel that may be registered, upon such registry being given up, or may register any vessel that may be enrolled, upon such enrollment and license being given up. (R. S. § 4322.)

§ 278. Penalty for unlawfully proceeding on foreign voyage.

*If any vessel, enrolled or licensed, shall proceed on a foreign voyage, without first giving up her enrollment and license to the collector of the district comprehending the port from which she is about to proceed on such voyage, and being duly registered by such collector, every such vessel, together with her tackle, apparel, and furniture, and the merchandise so imported therein, shall be liable to seizure and forfeiture.* [Italics not quoted.]

§ 280. Papers for vessels in whale fishery.

*All vessels which may clear with registers for the purpose of engaging in the whale fishery shall be deemed to have lawful and sufficient papers for such voyages, securing the privileges and rights of registered vessels, and the privileges and exemptions of vessels enrolled and licensed for the fisheries.* (R. S. § 4339.) [Italics not quoted.]

§ 310. Permit to touch at foreign port.

Whenever any vessel, licensed for carrying on the fishery, is intended to touch and trade at any foreign port, it shall be the duty of the master or owner to obtain permission for that purpose from the collector of the district where such vessel may be, previous to her departure, and the master of every such vessel shall deliver like manifests, and make like entries, both of the vessel and of the merchandise on board, within the same time, and under the same penalty, as are by law provided for vessels of the United States arriving from a foreign port. (R. S. § 4364.)

§ 311. Penalty for touching at foreign port without permission.

Whenever a vessel, licensed for carrying on the fisheries, is found within three leagues of the coast, with merchandise of foreign growth or manufacture, exceeding the value of $500, without having such permission as is directed by section 310 of this title, such vessel, together with the merchandise of foreign growth or manufacture imported therein, shall be subject to seizure and forfeiture (R. S. § 4365.)

§ 319. Fine for trading without license.

Every vessel of twenty tons or upwards, entitled to be documented as a vessel of the United States, other than registered vessels found trading between district and district, or between different places in the same district, or carrying on the fishery, without being enrolled and licensed, and every vessel of less than twenty tons and not less than 5 tons burden found trading or carrying on the fishery as aforesaid without a license obtained as provided by this chapter, shall be liable to a fine of $30 at every port of arrival without such enrollment or license, and if she have on board any merchandise of foreign growth or manufacture (sea stores excepted), or any taxable domestic spirits, wines, or other alcoholic liquors, on which the duties or taxes have not been paid or secured to be paid, she shall, together with her tackle, apparel and furniture, and the lading found on board, be forfeited * * *.

§ 321. Penalty for illegal enrollment or license.

Every collector, who knowingly makes any record of enrollment or license of any vessel, and every other officer, or person, appointed by or under them, who makes any record, or grants any certificate or other document whatever, contrary to the true intent and meaning of sections 251–255, 258, 259, 262–280, 293, 306–316, 318, 321–330, and 333–335 of this title * * * shall be liable to a penalty of $500, and be rendered incapable of serving in any office of trust or profit under the United States.

United States vessels which have been duly certified as safe to carry a cargo, *which are to engage only in trade with foreign countries*, and with certain of our possessions, after complying with specific restrictions as to ownership, may be registered under the provisions of section 11, *supra*. Registered vessels and no others shall be deemed vessels of the United States as provided in section 221, *supra*, except such as are qualified for the coasting and fishing trade. A vessel with the same qualifications as registered vessels, which is able to meet the same requirements as such vessels under section 252, *supra*, may be enrolled when of 20 tons and upward and having a license in force. These enrolled or licensed vessels, as indicated in section 251, *supra*, also constitute United States vessels "entitled to the privileges of vessels employed in the *coasting trade or fisheries*." Section 263, *supra*, in prescribing the form of the license, distinguishes between the coasting trade and the fisheries. It provides, however, for a combination of the "coasting trade and mackerel fishery" and provides that such license is sufficient to entitle the vessel to engage in the coasting trade and the taking of fish of every description.

It will be noted that section 278, *supra*, penalizes, by seizure and forfeiture, any enrolled or licensed vessel proceeding upon a foreign voyage, without first giving up her enrollment and license and being duly registered. Also, under section 310, *supra*, if a vessel is licensed for the fisheries and at the same time intends to touch and trade at any foreign port, permission must first be obtained from the collector previous to her departure from the district. When such licensed vessel is found within three leagues of the coast with foreign merchandise

aboard without a permit, such vessel, together with the merchandise, is subject to seizure and forfeiture. (See sec. 311, *supra*.)

Therefore, a registered vessel may engage only in foreign trade and an enrolled and licensed vessel may engage only in the coastwise trade, the fisheries, or a combination of the two. These are the only two classes of vessels that may be deemed vessels of the United States. The enrolled vessel is prohibited from engaging in a foreign voyage and a registered vessel is restricted to trade with foreign countries. Were we to rely solely upon the foregoing statutes, it would be illegal for a registered vessel to enter the whale fisheries, or for an enrolled vessel to undertake a foreign voyage for the purpose of the whale fisheries. However, section 280, *supra*, although it does not purport to change the law as to the registration and enrollment of American vessels, is a special authorization for registered vessels to clear for the purpose of engaging in the whale fishery. It permits a vessel ordinarily enrolled and licensed for fishing purposes to be registered for that purpose when engaged in the whale fishery and secures to vessels engaged in the whale fisheries the privileges and rights of registered vessels. There is nothing contained in the provisions of section 280, *supra*, which may be construed as permitting vessels registered thereunder to engage in the foreign trade and in the whale fisheries at the same time. It is common knowledge that the whale fisheries take vessels to the far corners of the Arctic and Antarctic Oceans, necessitating them to remain away from their home ports for long periods of time. Under this section, with registers, these vessels receive the protection and benefits of the United States Maritime laws, which, with enrollment and license, would be denied were vessels to encounter difficulties in foreign waters.

The decisions of the courts seem to accord with the foregoing interpretation of the statutes. In *The Sloop Active* v. *United States*, 7 Cranch 100, 3 L. Ed. 282, an American vessel duly enrolled and licensed for the cod-fishery, and having a permit to depart for employment in fishing for cod, was seized for attempting to engage in the coasting trade. The ship was secretly laden with merchandise with the intent of engaging in trade outside the port. It was the contention of the Government that inasmuch as the vessel was confined by law to the cod-fishery and could not lawfully carry on the coasting trade, the seizure was justified under the law. Chief Justice Marshall there stated:

The case is undoubtedly within the words of the 32d section of the enrolling and licensing act. The Active was a licensed vessel employed in a trade other than that for which she was licensed.

\* \* \* The Active and her cargo, therefore, must be considered as forfeited, except so far as they come within the 33d section, \* \* \*.

In *United States* v. *Matthias Leetzel*, 3 Wall 566, 18 L. Ed. 67, decided January 15, 1866, the Supreme Court distinguishes between the purpose of a register and an enrollment in the general provisions of such in the revised statutes, and also comments upon the special provision in the act of March 2, 1831 (4 U. S. Statutes 487), which undertakes to regulate both the foreign and coasting trade on the northern, northeastern, and northwestern frontiers of the United States. The pertinent portions of the decision read as follows:

The purpose of a register is to declare the nationality of a vessel engaged in trade with foreign nations and to enable her to assert that nationality wherever found. The purpose of an enrollment is to evidence the national character of a vessel engaged in the coasting trade or home traffic, and to enable such vessel to procure a coasting license.

    \*        \*        \*        \*        \*        \*        \*

There are two statutes in force making general provisions for the subjects of registry and enrollment of vessels. One of them is the act of December 31, 1792, ch. 1. (1 Stat. 287), which applies exclusively to vessels engaged in foreign commerce and to their registry, and the other is the act of February 18, 1793, ch. 8 (1 Stat. 305), which relates to vessels engaged in the coasting trade and fisheries, and to their enrollment.

    \*        \*            \*        \*        \*        \*

But the act of March 2, 1831 (4 U. S. Statutes, 487), undertakes, as its title imports, to regulate both the foreign and coasting trade, on the northern, northeastern and northwestern frontiers of the United States.

In these regions the domestic and the foreign trade are so blended that the same vessel is almost necessarily engaged in both at the same time, and often during the same voyage. To meet this kind of trade the 3d section of that act says, in reference to vessels engaged in navigating those waters, that "they shall be enrolled and licensed in such form as may be prescribed by the Secretary of Treasury; which enrollment and license shall authorize any such boat, sloop, or other vessel, to be employed either in the coasting or foreign trade, and no certificate of registry shall be required for vessels employed on said frontiers; provided that such boat, sloop, or other vessel shall be, in every other respect, liable to the rules, regulations, and penalties now in force relating to registered vessels, on our northern, northeastern and northwestern frontiers."

It is the obvious policy of this act to enable a class of vessels which are engaged in both the foreign and the coasting trade at the same time, to do so without the necessity of taking out both a register and an enrollment. For this purpose the act makes the enrollment equivalent to both register and enrollment. In giving to the enrollment the effect of a register, it very properly subjects the vessel to all the rules, regulations, and penalties relating to registered vessels. \* \* \*

The Supreme Court again referred to the statutes making general provisions for the enrollment and registry of vessels in the case of *Badger* v. *Gutierez*, 111 U. S. 734, 28 L. Ed. 581, where the court states:

It is to be understood that every vessel of the United States, which is afloat, is bound to have with her from the officers of her home port, either a register or an

enrollment. The former is used when she is engaged in *a foreign voyage* or trade and the latter when she is engaged in domestic commerce, usually called the coasting trade. If found afloat, whether by steam or sail, without one or the other of these, and without the right one, with reference to the trade she is engaged in or the place where she is found, she is entitled to no protection under the laws of the United States, and is liable to seizure for such violation of the law, and in a foreign jurisdiction or on the high seas, can claim no rights as an American vessel. [Italics not quoted.]

The Supreme Court in the foregoing decision appears to recognize that by reason of the special provisions of section 280, *supra*, a registered vessel may engage in a foreign voyage without engaging in foreign trade, to which registered vessels were limited under the provisions of section 11, *supra*. Section 280, *supra*, was derived from the act of April 4, 1840, 5 Statutes 370, enacted by Congress after a decision by the Circuit Court in the case of *United States* v. *Rogers et al.*, 27 Fed. Cases No. 16, 189, which involved a vessel upon a foreign whaling voyage. The vessel had not been enrolled and licensed for the whale fishery but carried a register. While on such voyage the crew endeavored to revolt. Rogers, the leader of the revolt, and others were indicted. In holding that the facts did not support the indictment, the court reviewed the statutes in the following language:

\* \* \* The statute of 1793, c. 52, §I, enacts, that such ships or vessels as are enrolled and licensed according to the provisions of that act, "and none others shall be deemed ships or vessels of the United States, entitled to the privileges of ships engaged in the coasting trade or fisheries;" and the whale fisheries are expressly within the purview of the act, as is abundantly seen in the form of the license prescribed by the fourth section. Now, it seems plain to me, that no registered ship is entitled to carry on the whale fisheries, as an American ship, or is entitled to the privileges of an American ship, under the statute of 1793, c. 52 (8). The third section declares, that it shall be lawful for the collectors of the several districts, to enroll and license any ship or vessel that may be registered, upon such registry being given up, or to register any ship or vessel, that may be enrolled, upon such enrollment and license being given up. And the sixth section treats every ship or vessel not so enrolled or licensed, and found engaged in the trade, as liable to pay the same fees and tonnage in every port of the United States, as ships or vessels not belonging to a citizen or citizens of the United States; and, under certain circumstances, the ship or vessel and its lading become liable to forfeiture.

The court was of the opinion that under the law the ship could not be deemed an American ship and therefore the crew was not the crew of such American ship, the court stating in that regard as follows:

\* \* \* Indeed, my impression is, that, upon the manifest intent of the act of 1793, c. 52 (8), no registered ship or vessel can, while she remains registered, engage in the whale fisheries; but she must surrender her register, and be enrolled and licensed for the fisheries. And that if she should be found engaged in such fisheries without such enrollment and license, at least, if she has on board any article of foreign growth and manufacture, or distilled spirits, other than sea

stores, she would be forfeited. The main purpose of the act would be utterly frustrated upon any other construction, and the main securities and privileges of the trade be defeated.

It appeared that for many years ships engaged in the whale fisheries had been sailing under registers without being enrolled and licensed and instructions were issued by the Treasury Department, after the decision of the court, directing that such ships sailing under registers shall be subject to tonnage duties, and the cargoes, if dutiable, would be liable to the payment thereof. The entire history of the events leading up to the enactment of the statute from which section 280, *supra,* was derived, appears in volumes 355 and 356 of the Congressional Series Set, Congressional Library, Washington, D. C. Therein is a message from the President of the United States to the president of the Senate, *pro tem,* dated December 27, 1839, referring to the facts (also reported in U. S. Senate Documents, 26th Cong., 1st sess., vol. 2, Doc. 12); and a message from the Secretary of the Treasury to the Vice President of the United States and president of the Senate, dated January 13, 1840, giving the history of the entire matter. (See U. S. Senate Documents, 26th Cong., 1st sess., vol. 3, Doc. 83.)

In the case of *Standard Dredging Co.* v. *United States,* T. D. 48136, this court held that an American-owned dredge, which was documented under the laws of the United States and employed in dredging operations in foreign ports, was not such a vessel as is documented under the laws of the United States to engage in the foreign or coasting trade, and therefore repairs made thereto in foreign ports were not subject to duty under section 466, *supra.*

In the situation here before us, we are of the opinion that the *Ulysses* was documented under the laws of the United States solely for the purpose of engaging in the whale fisheries, as provided for specifically under section 280, *supra;* that she would have been subject to seizure and forfeiture under section 311, *supra,* had she engaged in the foreign trade; that there is no documentation which would entitle vessels to engage "in foreign trade and in the whale fisheries"; and that such a documentation would be illegal. Therefore, the cost of equipment and the expenses of repairs made upon the *Ulysses* in order to convert her into a whale factory are not subject to duty under the provisions of section 466, *supra.*

Judgment will therefore be entered in favor of the plaintiff directing the collector to reliquidate the entry in accordance with law and make refund of all duties taken.